**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **VOXATHON LLC,**<br>　　　**Plaintiff,**<br>　　　**v.**<br>**ALPINE ELECTRONICS OF AMERICA,**<br>**INC.,**<br>　　　**Defendant.** | CASE NO. 2:15-cv-562-JRG<br><br>PATENT CASE |
| **v. HYUNDAI MOTOR AMERICA** | CASE NO. 2:15-cv-567-JRG<br>(CONSOLIDATED) |
| **v. SUBARU OF AMERICA, INC.** | CASE NO. 2:15-cv-571-JRG<br>(CONSOLIDATED) |
| **v. TOYOTA MOTOR SALES U.S.A.,**<br>**INC.** | CASE NO. 2:15-cv-572-JRG<br>(CONSOLIDATED) |
| **v. VOLKSWAGEN GROUP OF**<br>**AMERICA, INC.** | CASE NO. 2:15-cv-573-JRG<br>(CONSOLIDATED) |

**PLAINTIFF VOXATHON LLC'S COMBINED OPPOSITION TO DEFENDANT
HYUNDAI MOTOR AMERICA'S MOTION TO DISMISS THE COMPLAINT FOR
FAILURE TO STATE A CLAIM UNDER FED.R.CIV.P. 12(b)(6) (DKT. NO. 16)**

**AND**

**OPPOSITION TO DEFENDANTS TOYOTA MOTOR SALES, U.S.A., INC.'S AND
SUBARU OF AMERICA, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
FOR FAILURE TO STATE A CLAIM (DKT. NO. 28)**

**AND**

**OPPOSITION TO VOLKSWAGEN GROUP OF AMERICA, INC.'S MOTION FOR
JUDGMENT ON THE PLEADINGS (DKT. NO. 66)**

David R. Bennett
**DIRECTION IP LAW**
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:　dbennett@directionip.com

**ATTORNEY FOR PLAINTIFF
VOXATHON LLC**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... iii

TABLE OF EXHIBITS ............................................................................................ v

I.   INTRODUCTION ............................................................................................ 1

II.  BACKGROUND .............................................................................................. 3

     A.   Voxathon .................................................................................................3

     B.   The '261 Patent .......................................................................................3

          1.   The Invention in the '261 Patent Solves Problems Associated with
               the Use of Prior Art Telephone Sets ........................................................ 4

          2.   The Prosecution History Distinguished the Claimed Invention over
               the Prior Art Telephone Sets ................................................................... 4

          3.   The Claims of the '261 Patent are Directed to a Telephone Set with
               Call Appearance Buttons Having Particular Functionality ......................... 5

          4.   The Specification of the '261 Patent Discloses to a Person Skilled
               in the Art How to Implement the Claimed Invention ................................ 8

     C.   Defendants' §101 Motions Incorrectly Construe Claim Terms ............................10

          1.   "A Predetermined Number of Call Appearance Buttons" ........................ 10

          2.   "Receiving a Plurality of Incoming Telephone Calls from Calling
               Parties," "Receiving Multiple Incoming Telephone Calls from
               Calling Parties," and "Identifying a Telephone Number of the
               Calling Party of Each Incoming Telephone Call" ................................... 12

          3.   "Identifying a Telephone Number of the Calling Party of Each
               Incoming Telephone Call" ....................................................................... 13

          4.   "Automatically Redialing, in Response to the Attendant's
               Selection of One of the Call Appearance Buttons, the Stored
               Telephone Number of the Calling Party of the Incoming Call
               Assigned to the Selected Call Appearance Button" ................................. 13

III. STATEMENT OF THE LAW .......................................................................... 14

    A.     Motions for Judgment on the Pleadings are Viewed with Disfavor .......................14

    B.     Patent Eligibility under 35 U.S.C. §101 .................................................................16

IV.    ARGUMENT .................................................................................................................. 18

    A.     The Claims of the '261 Patent are Directed to a Telephone Set with Call Appearance Buttons, not an Abstract Idea ..............................................................18

    B.     The Claims Have Material, Non-Generic Limitations that Render the Claims Patent-Eligible Under §101 and have Narrow Scopes of Preemption .............................................................................................................20

         1.     The Claims Have Narrow Scopes of Preemption ..................................... 20

         2.     There are Several Material, Non-Generic Limitation that Make the Asserted Claims Patent Eligible.............................................................. 21

    C.     Defendants' Examples are Inapplicable Because They Disregard the Claim Limitations and are Subject to the Same Flaws in the Prior Art............................24

    D.     The Specification Sufficiently Describes to a Person Skilled in the Art How to Implement the Invention ..........................................................................25

    E.     Defendants' Comparison of the Claimed Invention to Claims from Patents in Other Technologies is Irrelevant.......................................................................27

    F.     At a Minimum, Disputed Issues of Fact and Claim Construction Exist that Require Denying the Motions as Premature .........................................................29

CONCLUSION.................................................................................................................... 30

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. ___, 134 S.Ct. 2347 (2014) ....................................................................... passim

*Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*,
   Case No. 8:11-cv-189, slip op. (C.D. Cal. Nov. 12, 2014) (Ex. G) ................................. 15

*AutoForm Eng'g GmbH v. Eng'g Tech. Assoc., Inc.*,
   2014 WL 4385855 (E.D. Mich. Sept. 5, 2014) ............................................................... 16

*Bancorp Services v. Sun Life Assur. Co. of Canada*,
   687 F. 3d 1266 (Fed.Cir. 2012) ...................................................................................... 15

*Bilski v. Kappos*,
   561 U.S. 593, 130 S.Ct. 3218 (2010) .............................................................. 17, 18, 19, 20

*Bilski, In re*,
   545 F.3d 943 (Fed.Cir. 2008)
   (*aff'd Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218 (2010)) ......................................... 18

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ...................................................................................... 14

*California Inst. of Tech. v. Hughes Comm., Inc.*,
   2014 U.S. Dist. WL 5661290 (C.D. Cal. Nov. 3, 2014) ............................................. 15, 16

*Campbell v. Wells Fargo Bank*,
   781 F.2d 440 (5th Cir. 1986) .......................................................................................... 14

*Card Verification Solutions, LLC v. Citigroup Inc.*,
   2014 U.S. Dist. WL 4922524 (N.D. Ill. Sept. 29, 2014) .................................................. 15

*Clear with Computers, LLC v. Volvo Constr. Equip. N. Am., LLC*,
   No. 6:14-cv-89, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) .................................... 27, 28

*Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
   Civil No. 12-4878 (JBS/KMW), slip op. (D.N.J. Aug. 19, 2014) (Ex. J) ........................ 15

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed.Cir. 2014) ............................................................................. 2, 16, 20

*Helios Software, LLC v. SpectorSoft Corp.*,
   C.A. No. 12-081-LPS, slip op. at 31-38 (D.Del. Sept. 18, 2014) (Dkt. No. 453)
   (Ex. H) ........................................................................................................................... 16

*Internet Patents Corp. v. Active Network, Inc.*,
   No. 2014-1048, slip op. (Fed. Cir. June 23, 2015) (Ex. K) ........................................ 25, 26

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
   677 F.2d 1045 (5th Cir. 1982) ........................................................................................ 14

*Lowery v. Texas A&M Univ. Sys.,*
    117 F.3d 242 (5th Cir. 1997) ............................................................ 14

*Loyalty Conversion Sys. Corp. v. American Airlines, Inc., et al.,*
    2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) .................................. 16

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.,*
    566 U.S. ___, 132 S.Ct. 1289 (2012) .............................................. 17

*McZeal v. Sprint Nextel Corp.,*
    501 F.3d 1354 (Fed.Cir. 2007) ....................................................... 14

*Netflix, Inc. v. Rovi Corp.,*
    Case No. C 11-6591 PJH, slip op. (N.D.Ca. Dec. 22, 2014) (Ex. F) ............ 16

*Phonometrics, Inc. v. Hospitality Franchise Systems,*
    203 F.3d 790 (Fed.Cir. 2000) .......................................................... 14

*Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.,*
    2014 WL 1998053 (E.D. Tex. May 15, 2014) ................................. 15

*Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.,*
    Case No. 2:13-cv-894, Dkt. No. 75 (E.D. Tex. July 21, 2014) (Gilstrap, J.) ...... 15

*StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.,*
    Case No. 8:13-cv-2240-T-33MAP, Slip Op. (M.D. Fl. Feb. 2, 2015) (Ex. I) ....... 16

*Ultramercial, Inc. v. Hulu, LLC,*
    722 F.3d 1335 (Fed. Cir. 2013) ....................................................... 15

*Wildtangent, Inc. v. Ultramercial, LLC,*
    573 U.S. __, 134 S. Ct. 2870 (2014) .............................................. 15

*WMS Gaming, Inc. v. Int'l Game Tech.,*
    184 F.3d 1339 (Fed.Cir. 1999) ....................................................... 21

**Statutes**

35 U.S.C. §101 ........................................................................... 1, 16, 20

**Rules**

Rule 12(b)(6), Fed.R.Civ.P. ......................................................... 14

Rule 12(d), Fed.R.Civ.P. ............................................................... 3

**TABLE OF EXHIBITS**

Exhibit A      United States Patent No. 6,442,261

Exhibit B      Excerpt of initial application claims in the application leading to  United
               States Patent No. 6,442,261 filed January 28, 1999

Exhibit C      First Office Action dated May 31, 2000 in the application leading to
               United States Patent No. 6,442,261

Exhibit D      Response to the First Office Action, dated June 22, 2000, in the
               application leading to United States Patent No. 6,442,261

Exhibit E      Notice of Allowability of United States Patent No. 6,442,261

Exhibit F      *Netflix, Inc. v. Rovi Corp.*,
               Case No. C 11-6591 PJH, slip op. (N.D.Ca. Dec. 22, 2014)

Exhibit G      *Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*,
               Case No. 8:11-cv-189, slip op. (C.D. Ca. Nov. 12, 2014) (Dkt. No. 215)

Exhibit H      *Helios Software, LLC v. SpectorSoft Corp.*,
               C.A. No. 12-081-LPS, slip op. (D.Del. Sept. 18, 2014) (Dkt. No. 453)

Exhibit I      *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, Case No. 8:13-cv-
               2240-T-33MAP, Slip Op. (M.D. Fl. Feb. 9, 2015)

Exhibit J      *Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
               Civil No. 12-4878 (JBS/KMW), slip op. (D.N.J. Aug. 19, 2014)

Exhibit K      *Internet Patents Corp. v. Active Network, Inc.*, App. No. 2014-1048, slip
               op. (Fed. Cir. June 23, 2015)

Exhibit L      Declaration of Lance J. McNally

Plaintiff Voxathon LLC ("Voxathon") files this Combined Opposition to (1) Defendant Hyundai Motor America's ("Hyundai") Motion to Dismiss the Complaint for Failure to State a Claim Under Fed.R.Civ.P. 12(b)(6) (Dkt. No. 16), (2) Toyota Motor Sales, U.S.A., Inc.'s ("Toyota") and Subaru of America, Inc.'s ("Subaru") Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Dkt. No. 28), and (3) Volkswagen Group of America, Inc.'s ("VWGoA") Motion for Judgment on the Pleadings (Dkt. No. 66) (collectively "§101 Motions").

Pursuant to LR CV-7(g), Voxathon respectfully requests an oral hearing.

## I.    INTRODUCTION

This case does not involve a "software" patent.  The asserted patent, U.S. Patent No. 6,442,261 ("the '261 patent" or "patent-in-suit"), has claims directed to methods and systems for recovering calls using an improved telephone set.  A telephone set is a physical object necessary for the invention and this rebuts that the invention is directed to an abstract idea.  Furthermore, unlike a standard telephone set, the claimed telephone set has call appearance buttons having specific functionality.  As an improvement over the prior art, the claimed invention does not preempt the prior art.  For example, the invention does not preempt recording telephone numbers for later redialing, redialing a missed telephone number, or maintaining a call log for returning recently received phone calls.  Instead, the invention requires a new telephone set with call appearance buttons having specific functionality.  This is not an abstract idea.

Despite the invention requiring a telephone set with call appearance buttons, Hyundai, Toyota, Subaru, and VWGoA (collectively, "Defendants") contend that all claims of the '261 patent are directed to an abstract idea and therefore ineligible for patent protection under 35 U.S.C. §101 ("§101").  Defendants' three motions argue essentially the same point: the invention is directed to the abstract idea of a person answering a telephone, manually recording the incoming telephone number on a call log, and manually redialing a telephone after looking up a

number on the call log.  This is not the invention.  First, the claimed invention requires a very particular device, a telephone set with call appearance buttons, as opposed to using a standard telephone set or generic computer.  Second, as described in the '261 patent, Defendants' alleged abstract idea has human errors that are corrected by the invention of the claimed call recovery system.  (*e.g.*, Ex. A at col. 1:16-21, col. 5:58-67).  The claims of the invention do not require a person to answer a telephone, manually record a telephone number, or manually redial a phone number, each of which have associated human error.  (*Id.*).  Third, the patent claims and specification disclose examples of how to implement the invention to a person skilled in the art.

Even if the Court were to find that an improvement to a call recovery system for a telephone set is an abstract idea, the claims have inventive concepts that transform the claims into a patent-eligible invention.  The claims are more than directed to "redialing a missed telephone number."  For example, the claims require call appearance buttons, assigning stored telephone numbers to the call appearance buttons, and automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected button.  (Dkt. No. 1 at Ex. A at col. 6:29-24).  The prior art did not have call appearance buttons, stored telephone numbers assigned to call appearance buttons, or the automatic redialing using call appearance buttons as required by the claims.  The claims of the '261 patent are also narrow and do not attempt to preempt every application of the idea of "redialing a missed telephone number."  *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed.Cir. 2014); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. ___, 134 S.Ct. 2347, 2354-55 (2014).

At a minimum, Defendants' motions are premature in view of the claim construction issues that their motions raise regarding at least the terms "a predetermined number of call

appearance buttons," "receiving a plurality of incoming telephone calls from calling parties," "receiving multiple incoming telephone calls from calling parties," "identifying a telephone number of the calling party of each incoming telephone call," and  "automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button." The disputed factual and claim construction issues are also supported by the expert Declaration of Lance J. McNally,[1] which is attached at Exhibit L.  As explained more fully below, the Court should therefore deny Defendants' §101 Motions.

## II.    BACKGROUND

### A.    Voxathon

Voxathon is the assignee of all right, title and interest in the '261 patent.  (Dkt. No. 1 at ¶10).[2]  The '261 patent has claims directed to methods and systems for recovering calls using an attendant telephone set having a predetermined number of call appearance buttons to which incoming calls are assigned.  (Ex. A at col. 6:24 – col. 8:7).  On April 29, 2015, Voxathon filed lawsuits against Defendants asserting that Defendants infringed at least claim 1 of the '261 patent through at least their using of in-dash call systems in their vehicles.  (Dkt. No. 1 at ¶11).[3]

### B.    The '261 Patent

The '261 patent is titled "Call Recovery Method and Apparatus for an Attendant Telephone Set," which was issued to assignee Avaya Technology Corp.  (Ex. A).[4]  The application leading to the '261 patent was filed on January 28, 1999, and the patent issued on

---

[1]  The Declaration of Lance J. McNally is submitted pursuant to Rule 12(d), Fed.R.Civ.P.
[2]  References to Dkt. No. 1 refer to Dkt. No. 1 in Case Nos. 2:15-cv-567, -571, -572, and -573, which have similar disclosures with respect to the cited information.
[3]  Voxathon filed 12 law suits asserting infringement of one or more claims of the patent-in-suit. (Case Nos. 2:15-cv-562 to -573 (E.D. Texas)).  Eight cases are currently pending.
[4]  Exhibits refer to the exhibits attached to the Declaration of David R. Bennett.

August 27, 2002. (*Id.*).   The field of the invention relates to "a call recovery system for an attendant telephone set" and particularly "to an attendant telephone set with multiple call appearance buttons."   (*Id.* at col. 1:8-10).   The '261 patent has 6 claims, consisting of 2 independent claims and 4 dependent claims.   Generally, the claims of the '261 patent are directed to improving telephone sets capable of receiving multiple incoming calls by providing a telephone set with multiple call appearance buttons that are associated with the telephone number of a calling party of an incoming call and redialing the phone number by selecting the associated call appearance button.   (*e.g.*, Ex. A at col. 1:16-21, col. 5:58-67).

### 1.   The Invention in the '261 Patent Solves Problems Associated with the Use of Prior Art Telephone Sets

The '261 patent explains that there are problems associated with the use of telephone sets that were available at the time of the invention.   (Ex. A at col. 1:16-21, col. 5:58-67).   For example, on phones capable of simultaneously receiving multiple incoming calls, incoming telephone calls are sometimes inadvertently dropped after being answered and the called party has no way to recover the lost call.   (Ex. A at col. 1:16-21).   A person may also be unable or unavailable to answer the multiple incoming calls and therefore multiple incoming calls are left unanswered calls with no record of who called.   (Ex. A at col. 5:58-67).   The '261 patent explains that there were known call recovery system, such as "*69" and caller id functionality, which had several disadvantages.   (*Id.* at col. 1:35-50).   The patent sought to overcome the disadvantages of these conventional call recovery methods and devices.   (*Id.* at col. 1:50-58).

### 2.   The Prosecution History Distinguished the Claimed Invention over the Prior Art Telephone Sets

The application leading to the '837 patent was filed on January 28, 1999.   (Ex. A).   The original claims were not amended during the prosecution and issued as filed.   (*See* Ex. B).

4

The claims were initially rejected as obvious over two prior art references:  U.S. Patent Nos. 5,878,123 ("Boakes") and 5,568,546 ("Marutiak").  (Ex. C at 2-3)).  The applicant distinguished Boakes, which disclosed a telephone system in which keys were dedicated to specific incoming phone lines.  (Ex. D at 3).  In Boakes, "the number of the telephone line of the party being called is identified, stored and connected."  (*Id.*).  Boakes did not disclose the invention "in which the number of the calling party is identified, stored and automatically redialed in response to selection of one of the call appearance buttons."  (*Id.* at 3-4).

The applicant also distinguished Marutiak, which disclosed "a telephone set for automatically and dynamically determining and storing a list of frequently called telephone numbers for abbreviated dialing or speed dialing."  (*Id.* at 4).  In Marutiak, "the telephone number of outgoing calls are identified and stored."  (*Id.* at 5).  Marutiak did not disclose that "the telephone number of the calling party from a plurality of incoming telephone calls is identified, stored and automatically redialed by the attendant telephone set in response to an attendant selecting one of the call appearance buttons."  (*Id.* at 4-5).

In response to applicant's arguments, the examiner issued a Notice of Allowability for all pending claims.  (Ex. E).

### 3.  The Claims of the '261 Patent are Directed to a Telephone Set with Call Appearance Buttons Having Particular Functionality

Claim 1 is directed to a method for recovering calls using an attendant telephone set having a predetermined number of call appearance buttons:

> 1. A method for recovering calls using an attendant telephone set having a predetermined number of call appearance buttons comprising:
>
> receiving a plurality of incoming telephone calls from calling parties;
>
> identifying a telephone number of the calling party of each incoming telephone call;

assigning each incoming telephone call to a next available call
appearance button of said predetermined number of call appearance
buttons;

storing the identified telephone number associated with each incoming
telephone call in a memory device; and

automatically redialing, in response to the attendant's selection of one
of the call appearance buttons, the stored telephone number of the
calling party of the incoming call assigned to the selected call
appearance button.

(Ex. A at col. 6:24-40). Claim 1 requires using a telephone set with a predetermined number of

call appearance buttons and memory. (*Id.*). The telephone set can receive a plurality of

incoming calls from calling parties. (*Id.* at col. 6:27-28). The telephone number of the calling

party of each incoming telephone call is identified. (*Id.* at col. 6:29-30). The incoming

telephone call is assigned to the next available call appearance button and the identified

telephone number associated with each incoming call is stored in memory. (*Id.* at col. 6:31-35).

When one of the call appearance buttons is selected, the stored telephone number of the calling

party of the incoming call assigned to the call appearance button is automatically redialed. (*Id.* at

col. 6:36-40).

Claims 2-3 depend directly from claim 1. In claim 2, the assigning of each incoming

telephone call to a next available call appearance button occurs in sequential order starting with

the first call appearance button through the last call appearance button, with the next call

appearance button after the last call appearance button being the first call appearance button. (*Id.*

at col. 6:42-49). In claim 3, the method also requires displaying the stored telephone number of

the calling party of the incoming call assigned to the selected call appearance button on a

display. (*Id.* at col. 6:50-53).

Claim 4 of the '261 patent is the second independent claim. Claim 4 is a system claim

which, similar to claim 1, is directed to a telephone set receiving multiple incoming telephone

calls from calling parties and having a predetermined number of call appearance buttons to which the incoming telephone calls are assigned.  (*Id.* at col. 6:54-58).  In addition to the call appearance buttons, claim 4 requires the telephone set to have a memory device for storing the identified telephone number of the calling party of each incoming telephone call.  (*Id.* at col. 6:59-61).  Claim 4 also requires a processor for identifying the telephone number of the calling party for each incoming call,  assigning the incoming call to the next available call appearance button, and automatically redialing the stored telephone number assigned to a selected call appearance button when the call appearance button is selected.  (*Id.* at col. 6:62 – col. 7:3).  Claims 5 and 6 depend directly from claim 4 and add limitations similar to those found in claims 2 and 3.  (*Id.* at col. 7:4 – col. 8:7).

The claims are directed to solving a problem specific to the use of telephone sets and are therefore tied to a particular device, rather than a general purpose computer.  The invention is directed to the use of a telephone set that can simultaneous handle more than one call.  (Ex. A at col. 1:16-20; col. 2:50-52).  When an attendant is answering a plurality of incoming telephone calls through a single telephone set, there are dropped or missed incoming telephone calls for which there is no record of who called.  (Ex. A at col. 1:16-21, col. 5:58-67).  The claimed invention eliminates the need for a person to be available to answer incoming calls, the error associated with recording incoming phone numbers, and the error associated with redialing calls.  (Ex. L at ¶¶20, 26-31).  The claimed invention identifies the telephone number of the calling party, stores it in memory, and associates it with a call appearance button.  (*Id.*).  These limitations eliminate the need for a person to be present to answer the phone, eliminate the need for a person to request the phone number from the incoming caller, and eliminate the error associated with manually writing down a telephone number.  (*Id.*).  The claimed invention also

requires that by selecting a particular call appearance button, the stored telephone number of the calling party assigned to that call appearance button will be automatically redialing.  (*Id.* at ¶¶30-31).  These limitations eliminate the need for a person to have previously recorded a telephone number, eliminate the need for a person to look up a recorded phone number, and eliminate the error associated with redialing a phone number.  (*Id.* at ¶¶29-31).

The dependent claims 2-3 and 5-6 add further limitations that improve upon the prior art.  (*Id.* at ¶¶23-24).  Claims 2 and 5 assign the incoming calls to the next available call appearance button in sequential order.  Recovered calls can therefore be stored in a particular order thereby allowing the calls to be easily redialed in that order.  Claims 3 and 6 require displaying the stored telephone number of the calling party assigned to the selected call appearance button.  This allows the user of the claimed invention to be aware of the incoming number in advance of redialing the telephone number.

4.    **The Specification of the '261 Patent Discloses to a Person Skilled in the Art How to Implement the Claimed Invention**

The specification discloses to a person skilled in the art how to implement the invention of a telephone set having a predetermined number of call appearance buttons.  Figure 1 of the '261 patent is an example of a telephone set with multiple call appearance buttons for a call recovery system.  (Ex. A at Fig. 1).  The exemplary telephone set has five call appearance buttons for receiving five different incoming telephone calls at any time.  (Ex. A at col. 2:60-64).  This diagram provides a person skilled in the art at the time of the invention with an example of the external physical appearance of the claimed telephone set with call appearance buttons.  (Ex. L at ¶34).

Figure 2 is a functional block diagram of one embodiment of the call recovery system.  (Ex. A at Fig. 2).  The telephone set comprises a processor with connected memory.  (*Id.* at col.

3:34-37, 4:18-22, Fig. 2).  The processor is for receiving and assigning multiple incoming calls to the call appearance buttons.  (*Id.* at col. 3:34-37).  The memory device connected to the processor is for storing the telephone number assigned to each call appearance button.  (Ex. A at col. 4:18-22).  For example, if there were five call appearance buttons, there would be five allotted areas in the memory device for storing telephone numbers of incoming calls assigned to call appearance buttons.  (Ex. A at col. 4:31-35).  A person skilled in the art at the time of the invention would understand this diagram to sufficiently disclose the electronics for a telephone set to perform the functionality required by the claims. (Ex. L at ¶35).  There were well-known processors available on the market that could process multiple incoming phone lines.  (Ex. L at ¶¶36-37).  A person skilled in the art would know how to program such a processor to assign an incoming phone call to a call appearance button.  (Ex. L at ¶43).

The identification of the incoming caller's telephone number is identified using conventional caller identification techniques.  (Ex. A at col. 6:29-34).  This disclosure provides a person skilled in the art with sufficient detail to implement the limitation requiring identification of the incoming caller's telephone number.  (Ex. L at ¶¶38-42).  A person skilled in the art would have been aware of the conventional caller identification techniques and would have known how to use the conventional techniques to identify the incoming caller's telephone number.  (*Id.*).

The description in the specification regarding allotting areas in memory for call appearance buttons and storing the telephone numbers in the allotted areas provides a person skilled in the art with sufficient detail regarding how to program the memory.  (Ex. L at ¶43; Ex. A at col. 4:31-35).  A person skilled in the art at the time of the invention would have known how to allot areas in memory for storing particular telephone numbers.  (Ex. L at ¶43).  For example, this was known in the context of phones in which a user could program a phone to

store in memory frequently dialed phone numbers and assign those numbers to particular buttons on a phone.  (Ex. L at ¶43).  Once a telephone number is stored in memory associated with a particular call appearance button, a person skilled in the art would have known how to program the button such that its selection would redial the associated number.  (Ex. L at ¶43).

### C.    Defendants' §101 Motions Incorrectly Construe Claim Terms

Defendants' motions rely on improper constructions of claim limitations including "a predetermined number of call appearance buttons," "receiving a plurality of incoming telephone calls from calling parties," "receiving multiple incoming telephone calls from calling parties," "identifying a telephone number of the calling party of each incoming telephone call," and "automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button."

### 1.    "A Predetermined Number of Call Appearance Buttons"

The explicit language of the claims require "a predetermined number of call appearance buttons."  The "predetermined number of call appearance buttons" limitation requires a new type of button for a telephone set.  The "call appearance buttons" limitation is an important feature of the claimed telephone set that is used in the specification and the prosecution history to distinguish the invention from the prior art.  (*e.g.*, Ex. A at col. 1:8-14, 64-66, Figs. 1, 3; Ex. D at 3).  Defendants' motions either disregard the "predetermined number of call appearance buttons" limitation or improperly construe the term to contend that the typical 0-9, # and * buttons on a telephone can be "predetermined number of call appearance buttons." This is contrary to the explicit claim language and the specification.

Defendants' motions first disregard the "predetermined number of call appearance buttons" limitation by contending that the buttons are satisfied by a person answering a telephone

call, requesting a telephone number from the caller, recording the telephone number in a call log, and then manually redialing the telephone number. (*e.g.*, Dkt. No. 16 at 10; Dkt. No. 28 at 4; Dkt. No. 66 at 6-8). VWGoA goes so far as to strike the call appearance button from the claim language to support its argument. (Dkt. No. 66 at 6-8). This analysis construes the "predetermined number of call appearance buttons" limitation to have no meaning and reads the limitation completely out of the claim. This analysis is also inconsistent with the necessity of the "predetermined number of call appearance buttons" described in the claim and the specification.

The claims are directed to "recovering calls using a handset using an attendant telephone set ***having a predetermined number of call appearance buttons***" and "call recovery system for an attendant telephone set receiving multiple incoming telephone calls from calling parties and ***having a predetermined number of call appearance buttons*** to which the incoming telephone calls are assigned." (Ex. A at col. 6:24-26, 54-58) (emphasis added). The buttons are necessary because they are part of the system to recover phone calls when calls are left unanswered or calls are inadvertently disconnected without the phone number being manually recorded. (Ex. A at col. 1:16-21; col. 5:59-67). The manual system described by Defendants to replace the "predetermined number of call appearance buttons" is prone to the exact error that the claimed call recovery systems correct: missed calls, calls for which telephone numbers are not recorded, incorrectly recorded telephone numbers, and misdialed phone numbers when returning phone calls. In other words, the "predetermined number of call appearance buttons" do not automate the prior art, instead the necessity of the "predetermined number of call appearance buttons" improve upon the prior art.

Defendants' motions also incorrectly contend that the "predetermined number of call appearance buttons" can be the standard 0-9, # and * buttons on a telephone. The specification

explains that the call appearance buttons are new buttons and the standard 0-9, # and * buttons are not "call appearance buttons." (*e.g.*, Ex. A at col. 1:23-33, 51-59, col. 2:45-50; col. 3:35-38; Fig. 1). Defendants therefore incorrectly construe the term "predetermined number of call appearance buttons" and do not use the term consistent with the intrinsic evidence.

> **2.** **"Receiving a Plurality of Incoming Telephone Calls from Calling Parties," "Receiving Multiple Incoming Telephone Calls from Calling Parties," and "Identifying a Telephone Number of the Calling Party of Each Incoming Telephone Call"**

The terms "receiving a plurality of incoming telephone calls from calling parties" and "receiving multiple incoming telephone calls from calling parties" require the claimed telephone set to be able to receive more than one phone call simultaneous. (*e.g.*, Ex. A at col. 1:16-20; col. 2:56-67; col. 3:15-23; col. 5:59-62; Ex. L at ¶27).  For example, the telephone set can simultaneously receive two or more incoming calls, or receive a second incoming call when the telephone set is already connected to an incoming call.  (Ex. L at ¶27).  If a telephone set is not capable of "receiving a *plurality* of incoming telephone calls from calling parties" or "receiving *multiple* incoming telephone calls from calling parties," then the limitations are not satisfied.

Defendants' incorrectly construe the terms to cover a telephone set that can only receive one incoming phone call at a time.  All of the examples described by Defendants only describe a single incoming phone line.  (Dkt. No. 66 at 5 (no simultaneous incoming phone calls are listed on the phone log), 6-8 (shows a person answering only one incoming phone call at a time with no logging of simultaneous incoming phone calls)).  Defendants are therefore not using "receiving a plurality of incoming telephone calls from calling parties" and "receiving multiple incoming telephone calls from calling parties" consistent with the intrinsic evidence.

12

3.      **"Identifying a Telephone Number of the Calling Party of Each Incoming Telephone Call"**

The claims also require "identifying a telephone number of the calling party of each incoming telephone call."  This limitation cannot be satisfied by failing to record the information for incoming calls.  Defendants' examples would incorrectly allow this limitation to be satisfied even if information for each incoming call is not recorded.  All of Defendants' examples require a person to answer the phone in order to record information regarding the incoming phone call. (Dkt. No. 16 at 12; Dkt. No. 28 at 2; Dkt. No. 66 at 5, 6-8).  However, if a call is left unanswered because a person is unable to answer the phone then the information regarding the incoming call is not recorded, which does not satisfy the limitation of "identifying a telephone number of the calling party of each incoming telephone call." (*e.g.*, Ex. A at col. 1:16-21, col. 5:58-67; Ex. L at ¶29).  As also explained in the '261 patent, the person may not correctly record the information so that the call log is insufficient to return a phone call. (*e.g.*, Ex. A at col. 1:16-21).  This is demonstrated with the White House call log, which identifies only names for most entries without any associated telephone number that can be redialed.  (Dkt. No. 66 at col. 5).

Defendants are therefore not using "identifying a telephone number of the calling party of each incoming telephone call" consistent with the intrinsic evidence.

4.      **"Automatically Redialing, in Response to the Attendant's Selection of One of the Call Appearance Buttons, the Stored Telephone Number of the Calling Party of the Incoming Call Assigned to the Selected Call Appearance Button"**

The term "automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button" requires automatically redialing a telephone number assigned to the selected call appearance button.

13

Defendants incorrectly construe this term to be satisfied by looking up a telephone number and then redialing the number using the standard telephone buttons.  (Dkt. No. 16 at 12; Dkt. No. 28 at 2; Dkt. No. 66 at 5-8).  Defendants' proposed construction disregards the call appearance button, the necessity for a telephone number assigned to the call appearance button, and the necessity of automatically redialing when the particular call appearance button is selected.  As explained above, the claims cannot be satisfied by a person answering the telephone, recording the telephone number, and redialing the telephone using the standard telephone buttons.  In sum, Defendants incorrectly contend that this term has no meaning.

## III.   STATEMENT OF THE LAW

### A.   Motions for Judgment on the Pleadings are Viewed with Disfavor

Regional circuit law applies to motions to dismiss for the failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir. 2007). The standard for deciding a Rule 12(b)(6) motion has been summarized by the Court of Appeals for the Fifth Circuit as follows:

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Lowery v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (citations omitted); *see Phonometrics, Inc. v. Hospitality Franchise Systems*, 203 F.3d 790, 793-794 (Fed.Cir. 2000) ("the dismissal standard is extraordinary, and one not to be taken lightly"; a motion to dismiss "is viewed with disfavor and rarely granted." (*citing and quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997))).

Although it is technically proper for a court to consider the invalidity of a patent based on ineligibility at the motion to dismiss stage, it is nevertheless "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter… because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed.Cir. 2013) (*vacated on other grounds by sub nom. Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. __, 134 S.Ct. 2870 (2014)); *Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 U.S. Dist. WL 4922524 at *2 (N.D. Ill. Sept. 29, 2014).  First, although ineligibility under §101 is a question of law, it is "rife with underlying factual issues." *Ultramercial*, 722 F.3d at 1338-39; *California Inst. of Tech. v. Hughes Comm., Inc.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014). Second, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a §101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed.Cir. 2012).  A dismissal under §101 is therefore only appropriate "when the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6  (*citing Ultramercial*, 722 F.3d at 1339); *also Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014) (Ex. J); *Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 at *3 (E.D. Tex. May 15, 2014).

Courts have therefore ruled on ineligibility under §101 after claim construction and on summary judgment thereby allowing factual issues to be developed and claim terms to be construed prior to issuing a decision.  *E.g.*, *Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Case No. 8:11-cv-189, slip op. (C.D. Cal. Nov. 12, 2014) (Dkt. No. 215) (Ex. G) (denied

summary judgment of invalidity under §101); *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290

at n. 6 (same); *Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081-LPS, slip op. at 31-

38 (D.Del. Sept. 18, 2014) (Dkt. No. 453) (Ex. H) (same); *AutoForm Eng'g GmbH v. Eng'g*

*Tech. Assoc., Inc.*, 2014 WL 4385855 (E.D. Mich. Sept. 5, 2014) (same); *Loyalty Conversion*

*Sys. Corp. v. American Airlines, Inc.*, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (granted

summary judgment of invalidity under §101 only after discovery and claim construction); *Data*

*Distrib. Techs.*, slip op. at 16-23 (Ex. J) (declining Rule 12(b)(6) motion of invalidity under §101

as premature due to lack of a claim construction); *DDR Holdings*, 773 F.3d at 1251; *Netflix, Inc.*

*v. Rovi Corp.*, Case No. C 11-6591 PJH, slip op. (N.D.Ca. Dec. 22, 2014) (Ex. F). (holding that a

§101 motion would only be heard after claim construction); *StoneEagle Services, Inc. v. Pay-*

*Plus Solutions, Inc.*, Case No. 8:13-cv-2240-T-33MAP, Slip Op. (M.D. Fl. Feb. 9, 2015) (Ex. I)

(denying §101 motion as premature pending claim construction).

### B.     Patent Eligibility under 35 U.S.C. §101

Section 101 defines patent eligible subject matters as follows:

> "Whoever invents or discovers any new and useful process, machine,
> manufacture, or composition of matter, or any new and useful
> improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title."

35 U.S.C. §101.  There are only three exceptions that are excluded from patent eligible subject

matter under §101:  Laws of nature, natural phenomena, and abstract ideas.  *Alice*, 134 S.Ct. at

2354.  The basis for these exceptions is that patenting basic tools of scientific and technological

work, which the Supreme Court referred to as the building blocks of ingenuity, would tend to

impede innovation rather than to promote it.  *Id.*  However, all inventions in effect embody, use,

or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-

ineligible merely because it involves an abstract concept.  *Id.*  Although patenting a building

block of ingenuity would risk disproportionately tying up the use of the underlying ideas, integrating the building blocks into something more "pose[s] no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws."  *Id.* at 2354-55.

In this case, Defendants do not dispute that the claim at issue is covered by the literal language of §101.  The analysis therefore proceeds to a two-step process to determine whether the claims at issue are patent-ineligible concepts.  *Id.* at 2355.

The first step "determine[s] whether the claim[ ] at issue [is] directed to one of those patent-ineligible concepts."  *Alice Corp.*, 134 S.Ct. at 2355. Defendants contend that the claim at issue is directed to only one patent ineligible concept: an abstract idea.  (Dkt. No. 34 at 1, 9-10; Dkt. No. 42 at 1, 6-8).  If the Court finds that the patent is not directed to a patent ineligible concept, *i.e.*, the patented invention is not an abstract idea, then the analysis ends there and the motion to dismiss under §101 must be denied.  If, however, the Court finds that the patented invention is directed to a patent ineligible concept, then the Court turns to the second step and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice Corp.*, 134 S.Ct. at 2357 (*citing Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. ___, 132 S.Ct. 1289, 1294, 1298 (2012).  Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize an abstract idea.  *Id.*  When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination.  *Id.* at 2355.

One non-exclusive test for analyzing patentability under §101 for method claim is the "machine-or-transformation test."  *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 3227 (2010).

A method is patentable under this test if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 3226-27 (*citing In re Bilski*, 545 F.3d 943, 954 (Fed.Cir. 2008)).

## IV.    ARGUMENT

Defendants' §101 Motions should be denied because, when the facts are liberally construed in favor of Voxathon, Defendants do not satisfy their high burden of proving invalidity by clear and convincing evidence.  First, the claims of the '261 patent are not directed to an abstract idea.  They are directed to a telephone set with call appearance buttons.  Second, even if the Court were to find that Defendants' alleged "abstract idea" was applicable, the claims of the '261 patent have additional features to ensure that the claims are more than drafted to monopolize an abstract idea.  Finally, there are claim construction disputes that require denying the §101 Motions as premature.  In sum, the §101 Motions fail to satisfy the high burden of proving that there is only one plausible reading of the claims at issue that results in clear and convincing evidence of ineligibility and, at a minimum, the motions are premature in view of the claim construction disputes.

### A.    The Claims of the '261 Patent are Directed to a Telephone Set with Call Appearance Buttons, not an Abstract Idea

The first step in a §101 analysis is to "determine whether the claims at issue are directed to one of [the] patent-ineligible concepts." *Alice Corp.*, 134 S.Ct. at 2355.  Defendants contend that the claims are directed to the patent-ineligible concept of an abstract idea.  However, the claims do not recite a mathematical algorithm, an economic practice, a pre-computer business practice, or a computer performing a non-essential function.  Instead, the claims are directed to a new telephone set that has call appearance buttons, which is patent-eligible subject matter.

Specifically, Defendants contend that the claims of the '261 patent are directed to one of three similar alleged abstract ideas: (1) redialing a missed telephone number when prompted by the telephone user, (2) recording incoming phone numbers for later redialing, or (3) maintaining a call log for returning recently received phone calls.  (Dkt No. 16 at 1; Dkt. No. 28 at 2; Dkt. No. 66 at 4).  Each of these alleged abstract ideas require a user to be present to answer the telephone, record the incoming telephone number, and then manually redial the phone number. However, the invention is directed to solving problems associated with the alleged abstract ideas: recovering telephone calls when either the incoming telephone calls were ended before the telephone numbers were manually recorded, or the incoming telephone calls were left unanswered.  (*e.g.*, Ex. A at col. 1:16-21, col. 5:58-67).  Telephone sets at the time of the invention did not have the necessary features to allow a user to recover such calls.  (*Id.*, col. 1:62 – col. 2:22).  The claims of the '261 patent solve the problems of the prior art through a new telephone set that has call appearance buttons with specific functionality.

Furthermore, the alleged abstract ideas disregards the actual limitations in the claim and disregard the purpose of the claims.  The claims are directed to an improvement to an actual physical device: an improved telephone set with call appearance buttons.  (Ex. L at ¶¶8, 12, 17, 19).  The telephone set with call appearance buttons is not an ancillary or incidental addition to an abstract idea, but are instead germane and integral parts of the invention disclosed in the claims of the '261 patent.  (Ex. L at ¶¶8, 12, 19-20).  The claims also require a telephone interface, a memory device, a processor, and a display.  (Ex. L at ¶¶9-10, 14-17).  Because the invention is necessarily tied to a particular non-generic machine or apparatus, namely a telephone set with call appearance buttons, it satisfies the machine-or-transformation test.  *Bilski*, 130 S.Ct. at 3227.  The claimed invention does not "simply depend upon the draftsman's art," as

Defendants contend, instead the claimed invention cannot be rewritten without reference to a telephone set with call appearance buttons.  (*See* Dkt. No. 66 at 13, Ex. L at ¶¶7-8, 17).

The claims are therefore patent eligible subject matter under §101 because they do not recite any of the usual patent ineligible subject matter and instead are directed to a physical invention of a telephone set with call appearance buttons.  (*See* Ex. L at ¶¶7-17).

**B.     The Claims Have Material, Non-Generic Limitations that Render the Claims Patent-Eligible Under §101 and have Narrow Scopes of Preemption**

The claims of the '261 patent are also patent-eligible under the second step of the §101 analysis.  The second step of a §101 analysis "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice Corp.*, 134 S.Ct. at 2357.  The claims of the '261 patent have material, non-generic limitations demonstrating an inventive concept that render the claims eligible under §101 and does not preempt every application of the abstract idea.  *DDR Holdings*, 773 F.3d at 1259.  Because the material limitations, considered both individually and as an ordered combination, significantly narrow the scope of the claims from the alleged "abstract idea," the claims of the '261 patent are patent eligible under §101.

**1.     The Claims Have Narrow Scopes of Preemption**

The main concern in a §101 analysis is identifying abstract ideas that "would pre-empt use of this [idea] in ***all fields***, and would effectively grant a monopoly over an abstract idea." *See Alice Corp.*, 134 S.Ct. at 2354 (*quoting Bilski v. Kappos*, 561 U.S. 593, 611-612, 130 S.Ct. 3218 (2010)) (emphasis added).  The claims of the '261 patent are not directed to a fundamental truth, an original cause, or a motive.  *See Alice Corp.*, 134 S.Ct. at 2355.  The claims require call appearance buttons, assigning stored telephone numbers to the call appearance buttons, and automatically redialing, in response to the attendant's selection of one of the call appearance

buttons, the stored telephone number of the calling party of the incoming call assigned to the selected button.  (Ex. A at col. 6:29-24).

Defendants implausibly contend that a telephone set with call appearance buttons is a generic computer.  (Dkt. No. 16 at 11-12).  A telephone set is not a generic or general purpose computer and there is no evidence that in January 1999, when the patent-in-suit was filed, that general purposes computers included a telephone set.  Even today, to use a generic computer as a telephone set would, at a minimum, require specialized software and possibly specialized equipment to act as a telephone set.  *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed.Cir. 1999) ("A general purpose computer, or microprocessor, programmed to carry out an algorithm creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." (internal quotes and citation removed)).  Furthermore, the claimed telephone set is also not a generic telephone set.  (Ex. L at ¶19).

### 2.      There are Several Material, Non-Generic Limitation that Make the Asserted Claims Patent Eligible

The claims of the '261 patent have several material, non-generic limitations that render the claims patent-eligible under §101.  One material, non-generic limitation is the "telephone set" limitation.   A "telephone set" is a specific purpose device, not a general purpose computer.

The requirement for a "telephone set" is further narrowed by the material, non-generic limitation requiring that the telephone set have "call appearance buttons."  (Ex. A at col. 6:25-26, 56-57).  A standard telephone set or using a standard telephone set cannot not meet this limitation because the claimed invention requires a telephone set with multiple call appearance buttons.  (Ex. L at ¶19).  This is a material non-generic limitation because these additional buttons are not found on prior art standard telephone sets.  (*Id.*).  This limitation can be designed

around by using a standard telephone set with standard caller id functionality described in the patent.  (*Id.*).  Because the claims require a telephone set with a predetermined number of new buttons, the claims have a narrow scope of preemption.  (*Id.*).

The claims also require that the "call appearance buttons" have material, non-generic functionality and operations.  (*Id.* at ¶20).  Each of the claim limitations help to eliminate the error associated with people having to answer and record information from telephone calls.  (*Id.*). The claims require that the telephone set  "identify[ ] a telephone number of the calling party of each incoming telephone call."  (Ex. A at col. 6:29-30, 59-61).  Defendants' alleged abstract idea would not satisfy this limitation because it would not identify the telephone number for unanswered calls and it would not identify the telephone number for calls that were dropped before the incoming telephone number could be requested and recorded.   (*See* Ex. A at col. 1:16-21, col. 5:58-67; Ex. L at ¶¶20, 26).  The claims also require "assigning each incoming telephone call to a next available call appearance button" and "storing the identified telephone number associated with each incoming telephone call in a memory device," which have narrow scopes of preemption.  (*Id.* at ¶20).  These limitations also eliminate the error associated with not recording a telephone number for dropped calls or unanswered calls.  (*Id.* at ¶20).

Another material, non-generic limitation associated with the call appearance buttons is "automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button."  (*Id.* at ¶21).  This limitation cannot be met by looking up a telephone number and then redialing it using the standard telephone buttons.  (*Id.* at ¶21).  The automatic redialing of an incoming call must occur as a result of selecting a call appearance button.  (*Id.* at ¶21).  This limitation can be designed around by not having any call appearance

buttons, not having incoming calls associated with call appearance buttons, and not allowing the redialing of a telephone number in response to the selection of a call appearance button.  (*Id.* at ¶23).  This limitation therefore has a narrow scope of preemption.

The requirement for "receiving [a plurality of/multiple] incoming calls from calling parties" is another material, non-generic limitation.  (Ex. A at col. 6:27-28, 55-56).  This limitation requires that the telephone set be able to receive more than one incoming call simultaneously.  (Ex. L at ¶¶22, 27).  A telephone set that allows only one incoming call at a time would not satisfy this limitation.  (*Id.*).

Dependent claims 2 and 4 also include a material, non-generic limitation by requiring that the incoming telephone calls are assigned to the call appearance buttons in sequential order and when the last call appearance button has been associated to a call, the next incoming call is assigned based to the first call appearance button.  (Ex. A at col 6:42-29; col. 7:4 – col. 8:3).  This limitation can be designed around by assigning the calls to call appearance buttons in a random order.  (Ex. L at ¶23).

Dependent claims 3 and 6 include a material, non-generic limitation by requiring "a display for displaying the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button."  (Ex. A at col. 6:50-53, col. 8:4-7).  This limitation requires the telephone to have a display and further that the telephone set can display the stored telephone number assigned to the selected call appearance button.  (Ex. L at ¶24).  This limitation can be designed around by not having a telephone with a display.  (*Id.*).  If a telephone has a display, the limitation could be designed around by not displaying the stored telephone number assigned to the selected call appearance button.  (*Id.*).  This limitation again has a narrow scope of preemption.  (*Id.*).

In sum, the claims of the '261 patent require a new telephone set with call appearance buttons to eliminate errors associated with requiring a person to answer a telephone, request the callers number, record the telephone number, and redial the telephone number.  The claims also have material, non-generic limitations and a narrow scope of preemption.

### C.     Defendants' Examples are Inapplicable Because They Disregard the Claim Limitations and are Subject to the Same Flaws in the Prior Art

Defendants' allegations regarding the scope of the invention demonstrate that their attempt to tie the invention to an abstract idea is incorrect.  Claims that require a telephone set with new buttons (call appearance buttons) cannot be called a "disembodied idea" that is "a textbook example of an attempt to disrupt basic aspects of American commerce while contributing nothing to the advancement of useful arts." (Dkt. No. 16 at 1).  Telephone set with only the standard 0-9, #, and * buttons do not infringe, and cannot be used to infringe, the claims of the '261 patent because, at a minimum, standard telephones lack call appearance buttons. Moreover, the reason for the invention is that the use of standard telephones are significantly prone to errors such as unanswered calls and dropped calls for which information regarding the incoming call is not recorded.  (Ex. L at ¶¶25-31).  Yet, these error prone examples are what Defendants use to try to demonstrate that the invention is abstract.

Defendants' examples all require a person to actually answer the phone, request the telephone number, record the telephone number, and manually redial the telephone number. (Dkt. No. 16 at 12).  The problems with these examples are described in the patent: calls are dropped before the telephone number is recorded or calls are left unanswered so that the telephone number cannot be requested.  (Ex. A at col. 1:16-21, col. 5:58-67).  For example, with the White House Call Log, unanswered calls are not recorded and the log does not record information on how to return the call for most, if not all, of the callers.  (*See* Dkt. No. 66 at 5).

Furthermore, a person can incorrectly log a telephone number or misdial a telephone number. (Ex. L at ¶31).  The claimed invention eliminates these errors.  (*Id.*).

Defendants' examples also disregard the claim limitations.  Defendants' disregard the call appearance buttons and contend that the invention can be performed by a standard telephone set. (*e.g.*, Dkt. No. 28 at 2, Dkt. No. 66 at 6-8).  Defendants disregard that the claims require the telephone set to identify the telephone number of each incoming call, assign it to one of the call appearance buttons on the telephone set, and store it in memory.   Defendants' examples instead add the step of requiring a person to answer the phone, request the phone number, and record it in a call log, which causes problems that the invention corrects.  (*e.g.*, Dkt. No. 66 at 6-8; Ex. L at ¶31).   Defendants disregard that the selection of the call appearance button automatically redials the stored number of the calling party of the incoming call assigned to the selected call appearance button.  Instead, Defendants examples require a person to review a call log, hope that the number is recorded in the call log, and then manually redial the phone number using the standard telephone buttons.  Defendants' examples suffer from the same flaws of the prior art described in the '261 patent.  The limitations, which are disregarded by Defendants examples, provide a solution to the flaws of the prior art.

### D.  The Specification Sufficiently Describes to a Person Skilled in the Art How to Implement the Invention

Defendants incorrectly commingle the §101 analysis with an enablement analysis by contending that an insufficient disclosure of the call appearance button in the specification renders the claims patent ineligible as abstract ideas.  The case relied on by Defendants, *Internet Patents Corp. v. Active Network, Inc.*, No. 2014-1048, slip op. (Fed. Cir. June 23, 2015) (Ex. K) does not support their contention.  In *Internet Patents* the claim required "maintaining said state upon the activation of another of said icons, wherein said maintaining allows use of said Back

and Forward navigation functionalities without loss of said state." *Id.*, slip op. at 4.  Neither the claim nor the specification described any mechanism for maintaining the state during Backward and Forward navigation.  *Id.*, slip op. at 10.  This left the mechanism for maintaining state an abstract idea because there was no mechanism disclosed.  In contrast, the claims in the '261 patent specifically require a telephone set with call appearance buttons.  The invention is therefore limited to the use of the new call appearance buttons on a telephone set and thereby disclosing the specific mechanism.

Regardless, the claims in the '261 patent do not simply claim a telephone set with call appearance buttons for redialing incoming calls without further description.  The claims instead require that the telephone number of the calling party of each incoming telephone call is identified, each telephone call is assigned to a call appearance button, the telephone number associated with the call appearance button is stored in a memory device, and in response to the section of a call appearance button, the stored telephone number of the calling party assigned to the selected call appearance button is automatically redialed.  (Ex. A at col. 6:24-41, col. 6:54 – col. 7:3).  The mechanism and steps for performing the claimed invention are therefore sufficiently described in the claims.  (Ex. L at ¶33).

The specification also provides further disclosures that are also sufficient to a person skilled in the art to implement the invention.  As explained above, a person skilled in the art at the time of the invention analyzing the figures disclosing an exemplary diagram of the physical appearance of a telephone set and the electronics (processor and memory) would understand the components necessary to implement the invention.  (Ex. L at ¶¶34-43, *supra* II(B)(4)).  Based on the disclosures in the specification, a person skilled in the art would know how to program a processor to identify the telephone number of an incoming call, assign the call to a call

appearance button, and store the telephone number associated with the telephone number in the memory device.  (*Id.*).  Furthermore, a person skilled in the art reading the specification would understand how to program the processor and memory such that the telephone number assigned to the call appearance button is automatically redialed in response to the selection of one of the call appearance buttons.  (Ex. L at ¶43).  A person skilled in the art would also know how to add a display to display the number associated with the call appearance buttons and how to assign the telephone numbers to call appearance buttons in particular orders.  (*Id.* at ¶43).  The specification therefore sufficiently discloses to a person skilled in the art how to make the claimed inventions. (*Id.* at ¶44).

>   **E.    Defendants' Comparison of the Claimed Invention to Claims from Patents in Other Technologies is Irrelevant**

Defendants comparison of the claims at issue to claims in an unrelated patent in a different technology is irrelevant to a §101 analysis.  (*See* Dkt. No. 16 at 9-10).  The two step analysis stated in *Alice* looks at the claims at issue to analyze their scope and meaning, not a comparison with claims in an unrelated patents.  Regardless, the claim of the unrelated patent in *Clear with Computers* demonstrate the patentability of the claims of the '261 patent.  *Clear with Computers, LLC v. Volvo Constr. Equip. N. Am., LLC*, No. 6:14-cv-89, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015).

The Court in *Clear with Computers* described the invention of the patent at issue as a computer program product.  Here, the claims are directed to an improved telephone set.  The claims in *Clear with Computers* were directed to an invention that was described by the Court without any reference to a tangible item ("the asserted claims are directed to the abstract idea of creating a customized sales proposal for a customer.").  In this case, Defendants cannot describe the invention without reference to a telephone, which is a specific, tangible device.  Furthermore,

the Court in *Clear with Computers* found that the invention could be performed without using a computer.  Again, the invention in the '261 patent cannot be performed without a telephone.

Defendants also seek to allege a similarity by comparing *four* words ("receiving," "storing," and "automatically redialing") in claim 1 of the '261 patent with 6 words in one claim of the patent at issue in *Clear with Computers*.  This oversimplified analysis makes no sense.  A search of the patent database at the United States & Trademark Office ("USPTO") for claims contain "receiving," "storing," and "automatically" returned results for 23,560 patents.[5]  In fact, on July 7, 2015 alone, the USPTO issued over 45 patents that had claims satisfying the search criteria to companies including Google, Amazon, and SAP.[6]  Defendants' analysis taken to its logical conclusion would automatically invalidate over 23,500 patents merely by the existence of a few isolated words in the claims.

Defendants' analysis would also invalidate a claim in a patent issued in July 2014 to defendant Hyundai's parent company:

> 7. A method of updating vehicle information using a wireless access point connected to a telematics server, the method comprising: connecting, via a wireless communication unit, to the wireless access point through a Wi-Fi network to ***automatically*** receive an update file; ***receiving***, by the wireless communication unit, the update file, when the update file regarding the vehicle information is present on the telematics server; ***storing***, by a control unit, the received update file; updating the vehicle information by using the stored update file; and when an error occurs during when the update file is transmitted, requesting that the telematics server resume transmission of the update file from the point at which the error occurred.

(U.S. Patent No. 8,768,537 (issued July 1, 2014 to Hyundai Motor Company)) (emphasis added).

Comparing four words in one patent to six words in an unrelated patent is therefore an irrelevant analysis under §101.  Instead of isolated words, the Court must consider "the elements of each

---

[5] http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.htm&r=0&p=1&f=S&l=50&Query=aclm%2Freceiving+and+aclm%2Fstoring+and+aclm%2Fautomatically&d=PTXT (search performed August 14, 2015).
[6] *Id.*

claim both individually and as an ordered combination." *Alice Corp.*, 134 S.Ct. at 2355 (*citing and quoting Mayo*, 132 S.Ct. 1289). As explained above, when considering the claim limitations individually and as an ordered combination, the claims are patentable under §101.

### F.   At a Minimum, Disputed Issues of Fact and Claim Construction Exist that Require Denying the Motions as Premature

Defendants have not satisfied their burden to show the absence of material issues of fact or claim construction issues.  As demonstrated above, Defendants have failed to show by clear and convincing evidence that there is only one plausible reading of the claims in the '261 patent that would invalidate on the grounds of subject matter ineligibility.  When the facts are liberally construed in favor of the plaintiff, Voxathon has raised many factual issues, including the facts supported by the Declaration of Lance J. McNally, regarding whether the claims of the '261 patent are directed to an abstract idea, the extent of the preemption of the claims, and the available alternatives to the claimed invention.  (*Supra* §§II(B)(4), IV(B)(2)).

Even if the Court were swayed by some of Defendants' arguments, there are claim construction disputes that make consideration of the §101 Motions premature at this time.  For example, there is a dispute over the construction of the terms "a predetermined number of call appearance buttons," "receiving a plurality of incoming telephone calls from calling parties," "receiving multiple incoming telephone calls from calling parties," "identifying a telephone number of the calling party of each incoming telephone call," and  "automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button." (*Supra* §II(C)).  In effect, the meaning of many material claim limitations in the '261 patent are disputed.

## CONCLUSION

For the foregoing reasons, Voxathon respectfully requests that the Court deny (1) Defendant Hyundai's Motion to Dismiss the Complaint for Failure to State a Claim Under Fed.R.Civ.P. 12(b)(6) (Dkt. No. 16), (2) Toyota's and Subaru's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Dkt. No. 28), and (3) VWGoA's Motion for Judgment on the Pleadings (Dkt. No. 66).

Dated:  August 17, 2015                         Respectfully submitted,

                                                */s/ David R. Bennett*
                                        By:   David R. Bennett
                                              **DIRECTION IP LAW**
                                              P.O. Box 14184
                                              Chicago, IL 60614-0184
                                              Telephone: (312) 291-1667
                                              e-mail:  dbennett@directionip.com
                                              **ATTORNEY FOR PLAINTIFF**
                                              **VOXATHON LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 17, 2015, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.

                                                */s/David R. Bennett*
                                                David R. Bennett

30