# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| VOXATHON LLC, § <br>    *Plaintiff*, § <br> § <br> v. § <br> § <br> ALPINE ELECTRONICS OF AMERICA, § <br> INC., § <br>    *Defendant*. § | Case No. 2:15-cv-562-JRG <br><br> (Lead Case) |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are multiple Rule 12(b)(6) Motions to Dismiss under 35 U.S.C. § 101 in Case No. 2:15-cv-562. (Dkt. Nos. 16, 28.) For the reasons set forth below, the Court **GRANTS** Defendants' Motions and finds that the challenged claim of the patent-in-suit is ineligible for patent protection on the ground that it is directed to unpatentable subject matter.

## BACKGROUND

In April 2015, Plaintiff Voxathon LLC ("Voxathon") filed actions against each of the Defendants[1] asserting infringement of at least claim 1 of U.S. Patent No. 6,442,261 ("'261 patent"). *See, e.g.*, (Dkt. No. 1.)[2] On June 26, 2015, the Court consolidated these actions under the lead case, No. 2:15-cv-562. (Dkt. No. 10.) On July 23, 2015, Voxathon served its infringement contentions on each of the Defendants. *See* (Notice of Compliance Regarding PR 3-1 and 3-2 Disclosures, Dkt. No. 64.)

After consolidation, Hyundai filed a Motion seeking dismissal on the basis that the claims of the '261 patent are not patent-eligible under 35 U.S.C. § 101. (Dkt. No. 16.) On July 10, 2015,

---

[1] The Defendants remaining in this consolidated action at the time of this Order are FCA US LLC ("FCA"), Nissan North America, Inc. ("Nissan"), Hyundai Motor America ("Hyundai"), Subaru of America, Inc. ("Subaru"), and Toyota Motor Sales, U.S.A., Inc. ("Toyota").

[2] Unless otherwise noted, all Docket Number citations refer to docket entries in case 2:15-cv-562.

Toyota and Subaru filed a Motion joining Hyundai's motion and seeking dismissal on largely the same basis. (Dkt. No. 28.)[3] The Court held a hearing on the instant Motions on October 2, 2015.

The patent-in-suit relates to computer-implemented systems and methods for transferring information efficiently. The '261 patent is entitled "Call Recovery Method and Apparatus for an Attendant Telephone Set" and was issued on August 27, 2002. The '261 patent has six claims that cover a substantially similar idea. Independent claim 1 of the '261 patent provides:

> 1. A method for recovering calls using an attendant telephone set having a predetermined number of call appearance buttons comprising:
>
> receiving a plurality of incoming telephone calls from calling parties;
>
> identifying a telephone number of the calling party of each incoming telephone call;
>
> assigning each incoming telephone call to a next available call appearance button of said predetermined number of call appearance buttons;
>
> storing the identified telephone number associated with each incoming telephone call in a memory device; and
>
> automatically redialing, in response to the attendan''s selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button.

Independent claim 4 similarly provides:

> 4. A call recovery system for an attendant telephone set receiving multiple incoming telephone calls from calling parties and having a predetermined number of call appearance buttons to which the incoming telephone calls are assigned comprising:
>
> a memory device for storing the identified telephone number of the calling party of each incoming telephone call; and
>
> a processor for identifying a telephone number of the calling party of each incoming telephone call and assigning each incoming telephone call to a next available call appearance button of said

---

[3] The Motions contain similar arguments. The Court will address Hyundai's Motion as the exemplar motion.

> predetermined number of call appearance buttons, said processor automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button.

Voxathon asserts at least independent claim 1 of the '261 patent. *See, e.g.*, (Dkt. No. 1 at ¶ 11.)

## DISCUSSION

### A. The Standard for Granting Motions for Summary Judgment Under Rule 56

Federal Rule of Civil Procedure 56(c) authorizes a Court to grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A party moving for summary judgment must satisfy its initial burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A "principal purpose[] of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24.

### B. Patentable Subject Matter under 35 U.S.C. § 101

Patent eligibility under § 101 is an issue of law, but the legal conclusion may contain underlying factual issues. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). Under the limited circumstances of this case, there are no material factual disputes that prevent the Court from deciding Defendants' motions pursuant to Rule 56.

Additionally, the relevant facts of this case demonstrate that claim construction is unnecessary. In certain circumstances, claim construction is not a pre-requisite to a § 101 determination. *Bancorp Servs., L.L.C. v. Sun Life. Assur. Co. of Canada (U.S.)*, 687 F.3d 1273, 1274 (Fed. Cir. 2012). Voxathon asserts that Defendants misconstrue or disregard certain claim

terms in their motions. *See* (Dkt. No. 88 at 10–14, 29). In particular, Voxathon identifies the following terms: "a predetermined number of call appearance buttons," "receiving a plurality of incoming telephone calls from calling parties," "receiving multiple incoming telephone calls from calling parties," "identifying a telephone number of the calling party of each incoming telephone call," and "automatically redialing, in response to the attendant's selection of one of the call appearance buttons, the stored telephone number of the calling party of the incoming call assigned to the selected call appearance button." (Dkt. No. 88 at 10.) The Court concludes that construing these terms would not alter the Court's analysis under § 101.

### 1. Legal Standard

35 U.S.C. § 101 provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

In deciding *Alice Corp. Pty. v. CLS Bank International*, 134 S. Ct. 2347 (2014) ("*Alice*"), the Supreme Court addressed a series of cases concerning the patent eligibility of software claims under 35 U.S.C. § 101. *See Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218 (2010) ("*Bilski*"); *see also Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) ("*Myriad*"); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) ("*Mayo*"). In *Alice*, the Court reiterated that the right of inventors to obtain patents, as codified in § 101, "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." 134 S. Ct. at 2354 (citing *Myriad*, 133 S. Ct. at 2116).

In determining whether to apply this exception under § 101, courts "must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-eligible

invention." *Alice*, 134 S. Ct. at 2354. To make that distinction, courts apply the two-step test originally articulated in *Mayo* and reaffirmed in *Alice*.

This test requires the Court to first "determine whether the claim[] at issue [is] directed to one of those patent-ineligible concepts," such as an abstract idea. *Id.* at 2355.

If the challenged claim satisfies this "ineligible concept" step, the court must then "determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1296–97). In this "inventive concept" step, the Court considers the elements of the claim both individually and "as an ordered combination" in order to determine if an element or combination of elements within the claims are "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* A claim may become patent-eligible when the "claimed [invention] include[s] . . . unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink.").

2. **Analysis**[4]

In order to prevail on a § 101 challenge, the movant must show that the challenged claim first fails the "ineligible concept" step and then also fails the "inventive concept" step of the *Alice* test. In this case, Defendants assert that the '261 patent fails both steps. First, Defendants

---

[4] The Court focuses its analysis on Claim 1 of the '261 Patent, as Claims 2–6 are "substantially similar and linked to the same abstract idea." *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343,1348 (Fed. Cir. 2014) (quotations omitted). For example, independent Claim 4 essentially claims a system to perform the steps of Claim 1.

argue that the patent is directed to the patent-ineligible abstract idea of redialing the phone number from a received phone call. Second, Defendants argue that the patent contains no inventive concept that transforms its nature into a patent-eligible application.

        **i.**        *Alice* **Step One: The Ineligible Concept Step**

Here, the Court finds that the asserted claim is directed to the abstract idea of responding to a sender of a message. The '261 patent recites a method of and a system for receiving a phone call, storing the phone number for the call, and redialing that number if so desired. *See, e.g.*, '261 patent at 6:24–41.

The claimed idea here represents routine tasks that could be performed by any human. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). While Voxathon claims that the '261 patent purportedly covers "methods and systems for recovering calls using an improved telephone set," the '261 patent essentially describes the process of responding to the sender of a message. For example, Claim 1 is really nothing more than the automation of responding to the sender of a message received on a telephone. *See, e.g.*, *Parker v. Flook*, 437 U.S. 584, 596–97 (1978). Whether a message is received through a telephone or a letter, the steps of receiving a message, identifying the sender of the message, remembering the address or phone number of the sender of the message, and responding to the sender of a message remain the same.

Voxathon contends that the '261 patent is not directed toward an abstract idea because it is "directed to a telephone set with call appearance buttons." (Dkt. No. 89 at 18.) Further, Voxathon argues that the '261 patent addresses problems with telephone sets in the prior art, such as "recovering telephone calls when either the incoming telephone calls were ended before the telephone numbers were manually recorded, or the incoming telephone calls were left

unanswered." (*Id.* at 19.) More specifically, Voxathon argues that the '261 patent discloses an "improved telephone set" that prevents such problems from occurring. (*Id.*)

Voxathon's arguments are unavailing. Though Voxathon claims the '261 patent is directed toward or discloses a new device, that device merely performs the abstract idea of responding to the sender of a message. *See, e.g.,* '261 patent at 6:24–41. The claims of the '261 patent are similar to the patents affirmed as patent-ineligible in *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1007–1008 (Fed. Cir. 2014), and *Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343,1347 (Fed. Cir. 2014). Like the *Planet Bingo* patents, Claim 1 of the '261 patent "recites the steps of selecting, storing, and retrieving [needed information]." *See Planet Bingo*, 576 Fed. Appx. at 1007. Similar to the *Content Extraction* patents, the '261 patent comprises the steps of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Content Extraction*, 776 F.3d at 1347. Adding the step of recalling such stored data does not change the Court's conclusion.

Accordingly, the Court concludes that, under the first step of the analysis, the claimed idea is directed toward an ineligible concept; that is: an abstract idea.

### ii. *Alice* Step Two: The Inventive Concept Step

Given that the claimed method is directed toward an abstract idea, the Court must next determine whether an inventive concept exists that is sufficient to transform the claim into patent-eligible subject matter. Such transformation requires more than simply stating the abstract idea "while adding the words 'apply it.'" *Mayo*, 132 S. Ct. at 1294. Since the proving of a negative is historically disfavored, once Defendants make a *prima facie* showing that an inventive concept is absent, it falls upon Voxathon to show that there is, in fact, an inventive

concept actually present.

Voxathon asserts that the '261 patent contains "several material, non-generic limitations that render the claims patent-eligible under § 101." (Dkt. No. 88 at 21.) Voxathon relies upon an expert declaration in an attempt to support these contentions, but the Court finds such declaration inadequate. *See, e.g.*, (Dkt. No. 88-13, "McNally Decl.") Further, the '261 patent does not claim the process of responding to a sender of a message in a manner that limits its use to a particular structure or machine. "To salvage an otherwise patent-ineligible process, a computer must be *integral* to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp*, 687 F.3d at 1278 (emphasis added). The inclusion of a generic computer to automate activity or behavior that has long existed does not suffice to meaningfully restrict the '261 patent from preempting the abstract idea of responding to the sender of a message. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("But relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."). Indeed, similar to the patent in *OIP Technologies*, the '261 patent simply automates an abstract idea—responding to the sender of a message—albeit through the use of a "telephone set." A generic computer can perform the same conventional and routine steps as the "telephone set" of the '261 patent. *See id.* at 1363–64.

Further, Voxathon argues the '261 patent's invention eliminates errors associated with the process of receiving and redialing a phone number. (Dkt. No. 88 at 22, 24–25.) Such argument is unpersuasive. Though a computer may be more efficient or less error-prone than a human, mere automation through a generic computer is not enough to render a patent eligible under § 101. *See OIP Techs.*, 788 F.3d at 1363. The '261 patent claims at issue "amount to nothing significantly more than an instruction to apply the abstract idea of [responding to the

sender of a message] using some unspecified, generic computer." *Alice*, 134 S. Ct. at 2360 (internal quotation marks omitted).

Finally, Voxathon argues that the '261 patent is patent-eligible because any preemption of an abstract idea is narrow and not absolute. (Dkt. No. 88 at 20–21.) The Court disagrees. *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."). The challenged claims, considered both independently and as an ordered combination, are not meaningfully limited in a manner that would prevent Voxathon from obtaining a monopoly over the abstract idea itself.

Accordingly, the Court finds that no inventive concept exists to transform the claimed abstract idea of responding to the sender of a message into a patent-eligible invention.

## CONCLUSION

For the reasons set forth above, the Court finds that the '261 patent is invalid under 35 U.S.C. § 101 and therefore **GRANTS** Defendants' Motions to Dismiss (Dkt. Nos. 16, 28).

**So ORDERED and SIGNED this 20th day of January, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE